United States District Court
Southern District of Texas
**ENTERED**
January 10, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PAMELA SHARPE, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF MITCHELL DUDLEY, DECEASED, *Plaintiff*, <br><br> v. <br><br> LYFT, INC. AND FLEXDRIVE SERVICES, LLC, *Defendants*. | § § § § § § § § § § § <br> CIVIL ACTION NO. 4:22-CV-4336 |

## MEMORANDUM AND RECOMMENDATION

This fraud case brought by Plaintiff Pamela Sharpe as the administrator of the estate of decedent Mitchell Dudley is before the Court on the Motion for Summary Judgment of Defendants Lyft, Inc. (Lyft) and Flexdrive Services, LLC (Flexdrive).[1] ECF 29. Having reviewed the parties' submissions and the law, the Court RECOMMENDS that Defendants' Motion be GRANTED and this case be DISMISSED WITH PREJUDICE.

**I.   Background**

The facts in this section are undisputed unless otherwise noted. Mitchell Dudley was killed on November 18, 2020 in a car accident with an uninsured or

---

[1] The District Judge referred this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  ECF 15.

underinsured motorist (UM/UIM). At the time of the fatal accident, Dudley was logged into the Lyft Rideshare Application (Lyft App.) as a driver. Dudley was driving a 2019 Hyundai Elantra, which he rented from Flexdrive, a subsidiary of Lyft. The rental car was for both his personal use and for his use as a driver using the Lyft App. Insurance for the rental car is addressed in Section 6 of the July 21, 2020 Flexdrive Rental Agreement electronically signed by Dudley (ECF 29-9), and in Section 8 of the November 17, 2020 Flexdrive Rental Agreement (ECF 29-10), which Dudley apparently had not electronically signed at the time of the November 18, 2020 accident. The relevant language is the same in both iterations of the Rental Agreement.

Insurance coverage varied depending on whether Dudley: was driving for personal use and was not logged into the Lyft App. (Period 0); was logged into the Lyft App. but had not accepted a request from a passenger (Period 1); was logged into the Lyft App. and had accepted a ride request but did not have a passenger in the car (Period 2); or was logged into the Lyft App. and had a Lyft passenger in the car (Period 3). It is undisputed that at the time of the accident, Dudley was in Period 1, i.e., he was logged into the Lyft App. as a driver but had not accepted a request for a ride.

Flexdrive was required to provide insurance for Period 0. During Period 0, Flexdrive provided: (1) liability coverage meeting state required minimums; (2)

physical damage coverage subject to a $1,000 deductible, and (3) ***"Uninsured/Underinsured Motorists Coverage**: **Coverage limits in accordance with local regulations and/or state laws."*** ECF 29-9 at 9; ECF 29-10 at 10 (emphasis added).

Lyft was required to provide insurance for Periods 1, 2, and 3. During Period 1, Lyft provided: (a) "primary commercial auto liability insurance as set forth in the applicable city's, states or region's Transportation Network Company ordinances;" and (b) Auto physical damages subject to a $1,000 deductible. During Periods 2 and 3, Lyft provided (a) "[p]rimary commercial auto liability insurance with a minimum combined single limit of $1,000,000 per accident, *including uninsured/underinsured motorist coverage limits in accordance with local regulations and/or state laws*"; (b) in some states, "primary commercial auto liability insurance with a minimum combined single limit of $1,500,000 per accident, *including uninsured/underinsured motorist coverage limits in accordance with local regulations and/or state laws*"; and (c) "Auto Physical Damage" for damage to the car itself. ECF 29-9 at 10; ECF 29-10 at 11 (emphasis added). On September 22, 2020, Lyft executed a written Texas Rejection of Uninsured/Underinsured Motorist Coverage form rejecting UM/UIM coverage "entirely." ECF 29-8.

Plaintiff, individually and in her capacity as the administrator of Dudley's estate, filed an Original Petition in state court asserting a claim against Defendants

3

for violation of the Texas Deceptive Trade Practice Act (DTPA). ECF 1-1. Defendants removed the case to this federal court based on diversity jurisdiction. ECF 1. On January 3, 2023, Plaintiff filed a First Amended Complaint asserting claims against Defendants for fraud by nondisclosure and violation of the DTPA. ECF 7. Defendants moved to dismiss Plaintiff's DTPA claim as well as all claims asserted in her individual capacity. ECF 10, 16. The Court granted Defendants' motions to dismiss and thus the only remaining claim before the Court is Plaintiff's claim for fraud by non-disclosure. ECF 18. Plaintiff asserts that Lyft and Flexdrive committed fraud by not disclosing to Dudley that Lyft had rejected UM/UIM coverage.

## II. Summary Judgment Standards

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party. *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir. 2002). If the moving party meets

its initial burden, the nonmoving party must go beyond the pleadings and must present evidence such as affidavits, depositions, answers to interrogatories, and admissions on file to show "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

The court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *R.L. Inv. Prop., LLC v. Hamm*, 715 F.3d 145, 149 (5th Cir. 2013). In ruling on a motion for summary judgment the Court does not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." *Honore v. Douglas*, 833 F.2d 565, 567 (5th Cir. 1987). However, "[c]onclus[ory] allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (citation omitted).

### III.  Analysis

Defendants move for summary judgment arguing that Plaintiff: (1) cannot show that Lyft or Flexdrive owed Dudley a duty to disclose Lyft's rejection of UM/UIM coverage; and (2) cannot show Dudley's justifiable reliance. Plaintiff responds that because § 1952.101 of the Texas Insurance Code requires all vehicle insurance policies to include UM/UIM coverage unless the insured rejects it in

writing, Defendants' representations regarding insurance coverage, combined with their failure to disclose to Dudley that Lyft rejected UM/UIM coverage, left Dudley with the reasonable but false impression that he at all times had UM/UIM coverage for the rental car.

### A. Fraud by non-disclosure standards

Fraud by non-disclosure is simply a subcategory of fraud. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997) (citations omitted). The elements of a claim for fraud by non-disclosure are: "(1) the defendant deliberately failed to disclose material facts; (2) the defendant had a duty to disclose such facts to the plaintiff; (3) the plaintiff was ignorant of the facts and did not have an equal opportunity to discover them; (4) the defendant intended the plaintiff to act or refrain from acting based on the nondisclosure; and (5) the plaintiff relied on the non-disclosure, which resulted in injury. *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219–20 (Tex. 2019) (citations omitted). The Texas Supreme Court has ruled that a cause of action for fraud by nondisclosure exists only if the defendant had a duty to disclose the withheld information. *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001) (holding "silence may be equivalent to a false representation only when the particular circumstances impose a duty on the party to speak and he deliberately remains silent."). Under Texas law, a duty to disclose arises when a confidential or fiduciary relationship exists between the parties.

*Mercedes-Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d 553, 562 (Tex. 2019). Generally, an arms-length contractual relationship does not create a duty to disclose. *Bradford*, 48 S.W.3d at 756. However, post-*Bradford* the Texas Supreme Court has recognized that "there may also be a duty to disclose when the defendant: (1) discovered new information that made its earlier representation untrue or misleading; (2) made a partial disclosure that created a false impression; or (3) voluntarily disclosed some information, creating a duty to disclose the whole truth." *Bombardier Aerospace Corp.*, 572 S.W.3d at 220 (citations omitted). The existence of a duty to disclose is a question of law. *Bradford*, 48 S.W.3d at 755.

### B. Defendants' duty to disclose

Plaintiff does not contend that either Defendant expressly misrepresented to Dudley that it purchased UM/UIM coverage for the rental car. Plaintiff does not challenge Defendants' contentions that Dudley was an independent contractor who had an arms-length contractual relationship with Defendants. Nor does she dispute that Lyft "maintained an insurance policy that met [] statutory requirements." ECF 30 at 5-6. Rather, Plaintiff argues that because Defendants informed Dudley that the rental car was insured "as set forth in the applicable city's, states or region's Transportation Network Company ordinances" (ECF 29-9 at 10; ECF 29-10 at 10), they also had a duty to disclose that Lyft rejected UM/UIM coverage.

7

In support, Plaintiff cites *Siddiqui v. Fancy Bites, LLC*, 504 S.W.3d 349, 369 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). ECF 30 at 7. *Siddiqui* recognizes four circumstances in which a duty to disclose may arise: "(1) when the parties have a confidential or fiduciary relationship; (2) when one party voluntarily discloses information, which gives rise to the duty to disclose the whole truth; (3) when one party makes a representation, which gives rise to the duty to disclose new information that the party is aware makes the earlier representation misleading or untrue; or (4) when one party makes a partial disclosure and conveys a false impression, which gives rise to a duty to speak." 504 S.W.3d at 369. Despite *Siddiqui*, Defendants argue stridently that Texas law does not recognize a duty to disclose information absent a confidential or fiduciary relationship and that the Texas Supreme Court has never adopted exceptions to this rule. *See* ECF 29 at 11-14; ECF 31 at 1-2. The Court need not to resolve the parties' dispute over this issue of Texas state law to resolve the pending Motion for Summary Judgment.

Assuming a misleading, partial disclosure of incomplete information creates a duty to disclose more information in the context of an arms-length transaction, Plaintiff cannot show that Defendants made such a partial disclosure to Dudley. In contrast to the express requirements for UM/UIM coverage during Periods 0, 2, and 3, the rental agreement conspicuously omits any reference to UM/UIM insurance during Period 1. Furthermore, the Lyft Terms of Service, available to Dudley on the

Lyft website, contained a link for access to Lyft's Certificate of Insurance. ECF 29-11 at 11-12. The Certificate of Insurance contains no mention of UM/UIM coverage. ECF 29-7. Texas law requires UM/UIM insurance *unless* the insured rejects the coverage in writing.[2] Lyft rejected UM/UIM coverage in writing. ECF 29-8. Further, Defendants never made any representation to Dudley that UM/UIM coverage applied during Period 1. Therefore, Defendants did not make any partial, misleading disclosure to Dudley regarding UM/UIM insurance which could support a claim for fraud by non-disclosure.

### C. Justifiable reliance

Even if Plaintiff could show that Defendants made a partial or misleading representation which created a duty to disclose Lyft's rejection of UM/UIM coverage, Plaintiff cannot show that Dudley justifiably relied on Defendants' omission. In order to satisfy the justifiable reliance element of fraud by non-disclosure, Plaintiff must show that Dudley ***actually relied*** on the omission to his detriment. *Mercedes-Benz USA, LLC*, 583 S.W.3d at 558 (holding that to prevail on a fraud claim a plaintiff must show ***actual and justifiable*** reliance (quoting *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010) (emphasis added))).

---

[2] Under Texas Insurance Code § 1952.101(c), UM/UIM coverage is not required "if any insured named in the insurance policy rejects the coverage in writing." Section 1954.052 requires a "transportation network company," like Lyft, to provide UM/UIM insurance "where required by Section 1952.101."

Plaintiff argues that because Dudley was not the named insured under the rental car insurance policy, he did not have access to Lyft's written rejection of UM/UIM coverage, and therefore he reasonably assumed that the rental car insurance policy included UM/UIM coverage. ECF 30 at 10. Plaintiffs' speculation as to Dudley's state of mind is no substitute for evidence of actual and justifiable reliance. Plaintiff has no evidence that Dudley reasonably assumed that the rental car insurance included UM/UIM coverage, nor evidence that he had any understanding at all about UM/UIM coverage. Plaintiff has no evidence that Dudley relied on this alleged assumption or that he would have acted differently, (by procuring supplemental insurance on his own), had he known that Lyft rejected UM/UIM coverage. Thus, Plaintiff cannot demonstrate the required element of justifiable reliance.

## IV.  Conclusion and Recommendation

Because Plaintiff has not met her summary judgment burden to create a genuine issue of material fact on all elements of her claim, the Court recommends that Defendants' Motion for Summary Judgment be GRANTED and Plaintiff's claims be DISMISSED WITH PREJUDICE.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(C). Failure to file written

objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on January 10, 2024, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge